ANNA E. MARSH

*v.*

GEORGE P. COOK.

1. No definition of fraud can be framed which will embrace every case, but no deception or artifice will be held to be an actionable fraud which does not cause injury or prejudice to the party seeking redress.

2. Courts have no power to enforce moral duties or to correct unconscientious acts which work no loss or damage.

3. A party cannot be defrauded in being induced to do what good faith and a proper observance of his promises make it his duty to do.

On final hearing on bill and answers, and proofs taken orally before the vice-chancellor.

*Mr. William B. Guild, Jr.*, for complainant.

*Mr. George T. Werts*, for defendant.

THE VICE-CHANCELLOR.

The complainant seeks a decree adjudging that a mortgage made by her to the defendant is void, because obtained by fraud. Two grounds are specified: First, that the defendant procured her to execute a mortgage to him for a sum largely in excess of the debt really due; and, second, that he induced her to execute it by falsely representing that it was not a mortgage, but merely a written acknowledgment of her indebtedness to him.

The proof in support of the first ground is very feeble. Aside from certain admissions imputed to the defendant,

Marsh *v.* Cook.

there is scarcely anything worthy to be dignified as proof. In addition it may be said that the countervailing evidence leaves no doubt as to what is the truth. The complainant had, for ten or twelve years prior to the fall of 1877, kept a summer boarding-house at Madison, New Jersey. The defendant, for most of that period, had furnished her with nearly all the butcher's meat she used. A settlement was made in the spring of 1873, when the complainant was found to be indebted to the defendant in over $500. Notes were given for the sum so found due, which, except a balance of $10, were paid in different sums at different times, during the next three or four years. In the meantime the defendant continued to supply the complainant with meat. The account of the meat furnished after the settlement was kept in a very careless and irregular way, so far, at least, as the defendant's interests were concerned. At first the entries were made in a pass-book, which was left in the possession of the complainant; afterwards, on a loose piece of paper, which was also left with her, and after that on the walls of her kitchen. No other account seems to have been made.

The parties are agreed that the defendant became urgent for a settlement in the spring or summer of 1877. The defendant says he furnished the complainant, in the spring of 1877, with the amount of his claim. In the fall of the same year the complainant began to make preparation to leave the state, and the defendant, in consequence, naturally became very anxious to have the amount of his claim liquidated and secured. He called on her at her residence, and told her what he made the amount of his claim; she thought she did not owe him so much, but he assured her that she did. She says she wanted him to wait, but that he replied, it would make no difference, if his claim was not right he would make it so. She further says she then gave him a note for what he said was due, and promised to give him security for its payment. She is mistaken in saying she gave him a note at this time—she first gave a due-bill, and

Marsh *v.* Cook.

afterwards, on the same day, gave a note. The due-bill admitted that the debt was $1,476, and gave her the right to give a note for it, at three years, upon condition that she secured its payment satisfactorily. At this time, it will be remembered, all the accounts were in her possession, and should have been easily accessible to her. If she really believed that the defendant claimed more than was due, she had it in her power to show him his error. Even if she only doubted, she had the means at hand to ascertain the truth. She neither then, nor at any subsequent time, appealed to the accounts to see whether his claim was correct or not. So far as the evidence gives any information, she never examined the accounts herself nor had them examined, to ascertain how much she owed. She did not produce the accounts on the trial, nor did she show that she had made such an effort to get them, or their contents, before the court, as to evince a strong anxiety that the correctness of the defendant's claim should be tested by the accounts themselves. Her conduct, in this respect, shows very plainly, I think, that she has never had the least faith that, if the accounts were produced, they would show that the defendant's claim was less than she has admitted it to be. It cannot be denied that the defendant has been extremely careless, but his conduct, in this respect, affords the complainant no ground of complaint. She was not endangered by it; it put her in a position of decided advantage, where she could much more easily and successfully wrong him than he could her. There is nothing in the evidence which will justify even a suspicion that the sum secured by the mortgage was not justly due to the defendant.

The second fraud charged is, that the defendant entrapped the complainant into the execution of the mortgage, by falsely representing it to be simply a written acknowledgment of her indebtedness to him. It is important to remark, just here, that when the due-bill was given, it was agreed between the parties that the complainant should have three years' further time within which to pay her debt, upon con-

.Marsh *v.* Cook.

dition that she gave a note with satisfactory security. 'This agreement is expressed on the face of the due-bill. The complainant now admits, in her evidence, that when she gave the note it was understood that she should give security for its payment, that she should execute a paper for that purpose, and that, when she executed the mortgage in question, she thought she was executing such a paper. But she says she also told the defendant that she would not give a mortgage, and that he replied he would not ask for one. This, however, the defendant denies. The mortgage conforms, in time of payment, to the terms of the agreement. The officer who took her acknowledgment, read it to her in full, plainly and distinctly, in the presence of the defendant. During the reading, she remarked it read like a deed, whereupon the defendant said it was not a deed, but a security for the note, and, if she paid the note, he would have no further claim under it. She acquired title to the mortgaged premises under the will of her husband, and at the foot of the description of the lands given in the mortgage they are referred to as the same which were given to her by the will of her husband. After the mortgage was read, the defendant left the room, leaving the complainant and the officer there alone. She then said that she did not think she owed the defendant so much money, to which the officer replied that she had a right to demand an itemized account, and that she was not obliged to sign the paper if she did not want to. She then executed the mortgage, and, immediately after doing so, stated that she supposed her son James would be very angry when he knew what she had done. The mortgage does not seem to have been referred to, by its technical name, by any of the parties in any part of the transaction, and it appears that the defendant made a remark to the officer, while they were on the way to the complainant's house, which will justify the belief that he wanted to conceal the technical name of the instrument.

These are the leading and material facts of this part of the case. Do they show that the complainant has been

inveigled into doing something whereby she has suffered injury or prejudice, which she did not mean to do, or which she had not agreed to do? The papers of themselves constitute a valid and valuable security, which the court cannot destroy or impair except they are shown, by clear and convincing proof, to be the offspring of fraud. I think it is safe to say that it is impossible to frame a definition of fraud which will accurately define it in all of its multitudinous forms, but I think it may be said, with equal safety, that no deception or artifice will be considered an actionable fraud, so as to be the proper subject of judicial redress, which has not been a cause of injury or prejudice to the party seeking redress. A misrepresentation or concealment, which has not been the means of producing damage or injury, is not within the cognizance of human tribunals, for they do not sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or damage. *Story's Eq. Jur.* §§ *187, 203; Perry on Trusts* § *169.*

Now it must be remembered that the complainant admits that when she gave the note, secured by the mortgage, she promised to secure its payment. It must also be remembered that the due-bill was enforceable at once, and that the defendant, in accepting the note, extended the time for the payment of his claim for three years. It will also be remembered that the complainant admits that she understood that it would be necessary for her, in order to fulfill her promise to secure the note, to execute some paper, and that she thought, when she executed the mortgage, she was executing that paper. She undoubtedly knew, when she executed the mortgage, that she was pledging the land as security. This fact seems to be put beyond all doubt by her remark that the paper read like a deed. The defendant's reply, it will be observed, described the legal effect of the mortgage as accurately as words could do it, to an unprofessional mind. The complainant understood that she was pledging the land as security for the debt. No

other conclusion can be fairly deduced from what must be considered the established facts of the case. How, then, has the complainant been injured? What loss or damage has she sustained? Is it true that she has been entrapped into doing anything which good faith on her part, or a proper observance of her obligations, did not require her to do? But she says she was not informed that the instrument was a mortgage, and that, had she been so informed, she would not have executed it; but she had information that was much more important to her. She was plainly told what was the legal effect of the instrument. That was the important thing for her to know. The mention of the name of the instrument would have told her nothing more. She knew enough to comprehend and understand the legal consequences of her act; that is all she need know.

But the decisive fact against the complainant's right to relief is, that she has suffered no wrong. She has done nothing more than good faith and a proper observance of her promises made it her duty to do. She was to have three years' further time within which to pay her debt, upon giving satisfactory security. She admits that was the understanding. Her part of the bargain is secured to her; she has already enjoyed the advantage of the most of what she was to gain by the bargain; she has given the defendant nothing in return, but what she now asks to have taken from him. Her claim, viewed in its ultimate consequences, is most unrighteous. She does not allege that she agreed to give one security, and that another was fraudulently substituted for it, but simply that she promised to give a security without specifying what, and then she says she gave the one she now seeks to overthrow, without knowing precisely what it was, and she now insists that it should, for that reason, be nullified. Without suffering wrong herself, she asks the court to commit a wrong against the defendant, in order that she may escape the payment of an honest debt.

Her bill must be dismissed, with costs.